# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

---

*David E. Patton*
Executive Director
and Attorney-in-Chief

Southern District of New York
Jennifer L. Brown
Attorney-in-Charge

February 22, 2022

**BY ECF AND EMAIL**
Honorable Jed S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street Room 1340
New York, New York 10007

Re: **United States v. Darius Jackson**
    **16 Cr. 750 (JSR)**

Dear Judge Rakoff,

    I write with the Court's permission, to request that the Court order early termination of Darius Jackson's supervised release. On October 3, 2017, the Court sentenced Mr. Jackson to a total term of 34 months imprisonment and three years of supervised release. On October 19, 2021, the Court corrected the term of Supervised release pursuant to Rule 36 of the Federal Rules of Criminal Procedure, due to a clerical error in the Judgment, to a total term of 36 months. Since his release from custody on August 28, 2019, Mr. Jackson has completed approximately 30 months of his 36 month term of supervision and is in full compliance with the terms of his supervision. He has been employed full time for the entire term of supervision and has made regular restitution payments. I have confirmed with his Probation Officer that he is in full compliance with all terms.

    I have communicated by email with Mr. Jackson's Probation Officer, Ivette Farfan from the Eastern District of New York, and she advised me that she consents to this application. I have also communicated with Michael Longyear, Esq., on behalf of the Government, and he advises me that the Government takes no position in reference to this application. Mr. Jackson has been advised by Probation that he is currently on low impact supervision whereby he is required to call in at certain intervals, and no personal appearances are required.

Honorable Jed S. Rakoff  
United States District Court  
Southern District of New York

February 22, 2022  
Page 2

Re: <u>United States v. Darius Jackson</u>  
16 Cr. 750 (JSR)

### Legal Standard

The Court may terminate an individual's supervised release "at any time after the expiration of one year… if [the court] is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). To make this determination, courts are directed to consider "the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6) and (a)(7)," essentially the same factors a court considers at sentencing. 18 U.S.C. § 3583(e).

Pursuant to this standard, courts have ordered early termination where a defendant has completed a substantial portion of his supervised release, complied with all relevant conditions, completed programming (such as drug or alcohol treatment), and if he does not represent a danger to the community.[1] <u>See</u>, e.g., <u>United States v. Chaar</u>, No. 00 Cr. 217 (JGK), 2005 WL 1844773, at *1 (S.D.N.Y. Aug. 3, 2005) (granting early termination where these conditions were met and supervision potentially interfered

---

[1] A court is not required to find "exceptional" circumstances to order early termination. That language does not appear in the statute. *United States v. Lussier*, 104 F.3d 32 (2d Cir. 1997), is often cited for this language. However, *Lussier*'s holding concerns the legality of modifying a restitution order post-sentencing. The court did not hold that exceptional circumstances were required for early termination – the only mention of such an idea is when the court noted, in passing, that "[o]ccasionally, changed circumstances-for instance, exceptionally good behavior by the defendant or a downward turn in the defendant's ability to pay a fine or restitution imposed as conditions of release-will render a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a)." *Lussier*, 104 F.3d at 36. To the extent that the Court determines it must find exceptional or changed circumstances here, it should find them based on Mr. Jackson's full compliance, completion of treatment, and his new employment opportunities if he could immediately move to Los Angeles.

**Re:	United States v. Darius Jackson**
	**16 Cr. 750 (JSR)**

with work opportunities); United States v. Kapsis, No. 06 Cr. 827 (WHP), 2013 WL 1632808, at *1 (S.D.N.Y. Apr. 16, 2013) (finding early termination warranted based on changed circumstances, including the defendant's steady employment, successful completion of treatment, and lack of law enforcement contact); United States v. Jimenez, Nos. 99 Cr. 1110, 99 Cr. 1193, 2012 WL 3854785, at *2 (S.D.N.Y. Sep. 5, 2012) (granting early termination where defendant had only one year remaining, had performed well on supervised release, and was considering relocation to Florida).

## Discussion

From the start of his sentence, Mr. Jackson approached prison as an opportunity for change. Prior to sentencing, Mr. Jackson struggled with alcohol abuse. He has no history of any other substance abuse. He completed the RDAP Alcohol Abuse Program while incarcerated. He did not incur any disciplinary infractions while in prison. Since his release, Probation referred him to an alcohol abuse program for counseling and treatment which he successfully completed.

Upon his release from incarceration, he moved in with his mother. He immediately began full time employment as a barber/hairdresser/stylist, and has consistently made restitution payments as required. Mr. Jackson fully understands that when his supervision is completed, that he will continue to make restitution payments.

Mr. Jackson plans to move to Los Angeles as soon as his supervision is completed so that he can pursue a new and more lucrative career. His request for early termination is because he has already been discussing job opportunities as a stylist with some celebrity clients and does not want to lose this opportunity if he were to wait an additional six months. His fiancé is also planning to move to Los Angeles and is likely to leave in the very near future.

Mr. Jackson's post-release conduct makes him exactly the type of probationer who deserves early termination. He has successfully completed 30 months of his 36 months of supervised release, which would otherwise expire in August, 2022. He is

Honorable Jed S. Rakoff  
United States District Court  
Southern District of New York  

February 22, 2022  
Page 4  

**Re: <u>United States v. Darius Jackson</u>**  
    **16 Cr. 750 (JSR)**

currently subject to low intensity supervision, in which his reporting is at a minimum. He has taken affirmative and exceptional steps towards his own rehabilitation: by his full time employment, and successful completion of treatment for his alcohol abuse. He was not convicted of a violent offense; and there is no reason to think that he represents a danger to the public. Supervision is no longer necessary for either his own rehabilitation or the protection of the community. And because Mr. Jackson has significant job opportunities that will further his career and are more lucrative, his ability to increase his restitution payments will benefit his victim (Macys department store). Under these circumstances, early termination is warranted.

In a 2018 Memorandum to all District Court Judges, the Probation office articulated a policy of promoting an increasing number of early terminations of supervision, particularly in low risk cases like Mr. Jackson's. In fact, they have identified a "presumption" for early termination in those cases with Mr. Jackson's criteria. <u>See</u> Defense Exhibit A. They note that an outstanding financial penalty, "per se does not adversely affect early termination."

## Conclusion

"Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends…" <u>United States v. Johnson</u>, 529 U.S. 53, 59 (2000). Mr. Jackson's performance on supervision, his steady employment, lack of ongoing addiction issues, and his job opportunity in Los Angeles all make clear that he has, in fact, successfully reintegrated to his community. For all of these reasons, the Court should find that early termination of Mr. Jackson's supervised release is in the interests of justice and the Court should order such termination.

Respectfully submitted,

*[signature]*

Robert M. Baum, Esq.  
Assistant Federal Defender

Honorable Jed S. Rakoff  February 22, 2022
United States District Court  Page 5
Southern District of New York

**Re:** **<u>United States v. Darius Jackson</u>**
   **16 Cr. 750 (JSR)**


cc: Michael Longyear, Esq.
    United States Attorney's Office
    Southern District of New York

    Ivette Farfan  U.S.P.O.
    E.D.N.Y.

# EXHIBIT A



# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK
# PROBATION OFFICE

## MEMORANDUM

TO:     District Court Judges

FROM:   Michael J. Fitzpatrick
        Chief United States Probation Officer

RE      Early Termination From Probation and Supervised Release

DATE:   March 5, 2018

I am writing to inform that the Probation Department has been working with the United States Attorney's Office and the Office of the Federal Defender to identify a more systematic approach to identify persons under supervision who may be appropriate for early termination from supervised release or probation. The statutory authority for the court to terminate a term of supervised release is derived from Title 18 USC 3583(e)(1), while the authority for the court to terminate a term of probation is derived from Title 18 USC 3564 9(c).

Early termination from probation or supervised release for appropriate cases is supported by both the Judicial Conference and the Administrative Office. The most recent study of early terminations was released by the Criminal Law Committee of the Judicial Conference in 2013. This report revealed that early-terminated offenders were arrested within three years at approximately half the rate of their counterparts who served full terms (i.e. 10.2 percent for early terminated offenders vs. 19.2 percent for similarly situated full term offenders).

There are several reasons for implementing this program. In recent years the federal probation system has adopted an evidence based approach to supervising persons placed on supervised release or probation. The system uses the Risk-Needs-Responsivity (RNR) model, and as part of this model a number of persons who are defined as low risk have been transferred to low risk

caseloads. This practice has allowed the Probation Department to focus more of its resources on higher risk cases.

Now that we have several years of experience in supervising persons under supervision as part of our low risk caseload, we believe we now have sufficient evidence to begin recommending that supervision be terminated for a number of these cases. Over the past three fiscal years, individuals who have been classified as low risk have seen their supervision terms revoked at an extremely low rate. In fiscal year 2015, the revocation rate was 1.7%; in fiscal year 2016, the rate was 1.6%; and in fiscal year 2017 the rate was 3.6%. The overall revocation rate for cases in these years was 20.6%, 21.6%, and 25.2% respectively.

In fiscal year 2017, at the national level, the rate of closed cases that were closed by early termination was 14.3%. Within the 2nd Circuit, the districts that had the highest rate of cases which were closed by early termination were Vermont at 15.5%, and the Northern District of New York at 13.7%. The early termination rate in the Southern District of New York was 6.6% (66 cases).

Although it is difficult to predict the exact number of cases that will receive early terminations, if we use the national average as a benchmark, our district would have seen an increase of 76 cases.

The Probation Department will review cases which meet the presumption for recommending early termination, as defined in 18 USC 3564(c) and 35839(e)(1) (attached as Appendix A). After doing so, the Probation Department will advise the United States Attorney's Office and the defense attorney of our intention for recommending an early termination from supervision. After obtaining feedback from all parties, the Probation Department will submit a petition to the court requesting that early termination be granted.

Please contact me if you have any questions regarding this initiative.

Appendix A

Criteria

The appropriateness of early termination should be based on the releasee's compliance with all conditions of supervision and overall progress in meeting supervision objectives or making progressive strides toward supervision objectives specific to the releasee that exhibit stable community reintegration (e.g.. residence, family, employment, health, social networks) during the period of supervision and beyond. These objectives should be detailed in the supervision plan which should include an evolving, individualized outcome-based plan of action.

According to Monograph 109 § 380.10:

Under 18 U.S.C. §§ 3564(c) and 3583(e)(1), the court may terminate terms of probation in misdemeanor cases at any time and terms of supervised release or probation in felony cases after the expiration of one year of supervision if satisfied that such action is warranted by the conduct of a releasee and is in the interest of justice. (Note: Early termination of parole cases is governed by the United States Parole Commission Rules and Procedures Manual, section 2.43.)

There is a presumption in favor of recommending early termination for probationers and supervised releasees:

1. Who have been under supervision for at least 18 months and

(A) are not career violent and/or drug offenders (as described in 28 U.S.C. § 994(h)), sex offenders, or terrorists,

(B) present no identified risk to the public or victims, and

(C) are free from any moderate (see: Guide, Vol 8E, § 620.40.20) or high (see: § 620.40.30) severity violations; and

(2) Who have been under supervision for at least 42 months and

(A) are not career violent and/or drug offenders (as described in 28 U.S.C. § 994(h)), sex offenders, or terrorists, and

(B) are free from any moderate (see: Guide, Vol 8E, § 620.40.20) or high (see: § 620.40.30) severity violations

Moderate and high severity violations are listed in an attachment to this policy.

Officers should consider the suitability of early termination for releasees as soon as they are statutorily eligible. *A determination of suitability for early termination should be addressed and documented at the first annual case plan (at the 18 month-mark) and not less than yearly thereafter. Lower risk cases should be given special consideration and priority for early termination.*

The general criteria for assessing whether a statutorily eligible releasee should be recommended to the court as an appropriate candidate for early termination are as follows:

1. Stable community reintegration (e.g., residence, family, and employment);

2. Progressive strides toward supervision objectives and in compliance with all conditions of supervision;

3. No aggravated role in the offense of conviction, particularly large drug or fraud offenses;

4. No history of violence (e.g., sexually assaultive, predatory behavior, or domestic violence);

5. No recent arrests or convictions (including unresolved pending charges) or ongoing, uninterrupted patterns of criminal conduct;

6. No recent evidence of alcohol or drug abuse;

7. No recent psychiatric episodes;

8. No identifiable risk to the safety of any identifiable victim; and

9. No identifiable risk to public safety based on the Risk Assessment.

The existence of an outstanding financial penalty, per se does not adversely affect early termination eligibility as long as the releasee has been paying in accordance with the payment plan.

Once the above is demonstrated, the following considerations must also be made:

1. A releasee must demonstrate a minimum of 12 months sobriety and successful participation or completion of substance abuse treatment, if required.

2. A releasee must have demonstrated mental and emotional stability, and has complied with mental health treatment, if required.

3. A releasee must have demonstrated compliance with payment schedules regarding all court ordered financial penalties, including fines, restitution and special assessments **and** have a payment satisfaction plan in place with the Financial Litigation Unit (FLU) of the U.S. Attorney's office.

4. A releasee must not pose a threat to the community ( e.g., sexually assaultive, or other predatory behavior)